UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-600-MOC
(3:90-cr-85-MOC-3)

| | |
|---|---|
| ERIC LAMOUNT WHITENER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )        ORDER |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| —————————————————— | ) |

**THIS MATTER** is before the Court on the following motions by Petitioner: "Motion for

Reconsideration," of this Court's prior order dismissing Petitioner's motion to vacate as time-

barred (Doc. No. 20); "Motion for Recusal under 28 U.S.C. §§ 144 and 455," (Doc. No. 56); and

Petitioner's "Motion for Reconsideration re Order denying Motion/Objection to the

Government's Untimely Filing of Exhibit," (Doc. No. 57).

## I.      BACKGROUND

**A. Petitioner participates in a violent drug-trafficking street gang, serving as a
leader within the gang and engaging in numerous acts of violence in furtherance of the
organization.**

Between November 1988 and March 1990, Petitioner and his cousin and co-defendant,

Cecil Jackson, led and managed a drug-trafficking organization that sold crack cocaine in

Charlotte, North Carolina.  See United States v. Jackson, 1992 WL 4248, at *1 (4th Cir. Jan. 14,

2002).  Cecil Jackson obtained crack cocaine from a source in New York City and powder

cocaine from a source in Charlotte.  Cecil Jackson and Petitioner cooked the powder cocaine into

1

crack cocaine and ordinarily gave street dealers 25 bags of crack to sell at $20 each. (J.A. at 397-99: Doc. No. 29-1, Attached as Ex. 1 to Gov't Response in Opposition to Motion for Reconsideration; <u>see also</u> Doc. Nos. 47-2; 47-3, 47-4: Trial Tr., Attached as Exs. 2, 3 & 4).[1]

Jackson and Petitioner assigned areas of distribution and used walkie-talkies to maintain contact with their dealers. (J.A. at 420; 573; 851-52). All members of the organization were armed. <u>See</u> (<u>Id.</u> at 414-15; 425-26; 541, 892-93). Although Jackson and Petitioner initially advised members only to shoot below the waist because shooting below the waist was only a misdemeanor, after several street battles with other gangs, they ordered their members to shoot to kill. (<u>Id.</u>).

In March 1989, Elliott Alexander, a street dealer in the organization, smoked approximately $500 of crack cocaine that he was supposed to sell for Cecil Jackson. (<u>Id.</u> at 617). When Cecil Jackson and his brother Orrin Jackson discovered the loss, they threatened to kill Alexander if he failed to pay them $500. On March 25, 1989, Cecil Jackson, accompanied by Petitioner and other members of the gang in a convoy of cars, fired an Uzi machine gun at Alexander as he was sitting on the porch of a house, missing him but wounding another person. (<u>Id.</u> at 617-20; Doc. No. 30 at 24: Grand Jury Tr., filed separately under seal as Ex. 2). As Alexander fled, he was wounded in the back by a .9 millimeter bullet and in his leg by a round from a .25 automatic. (J.A. at 617-20).

---

[1]  The Government has attached as its Exhibit 1 excerpts of the Joint Appendix, submitted by the parties on appeal from this Court's original judgment against Petitioner, and the Court refers to the page numbers of the Joint Appendix as set forth by the Government in its brief. Because of the age of this case, the underlying trial record is not part of the electronic docket in Petitioner's underlying criminal action. On December 1, 2015, pursuant to an order from this Court, the Government filed Exhibit 1A, which contains the underlying Indictment, Judgment, and full trial transcripts. (<u>Id.</u>, Doc. No. 47). In citing to the record, this Court relies on the record citations as provided in the Government's response brief.

On July 1, 1989, Cecil Jackson, Petitioner, Jamie Barker, and Purvis Roseboro were present when Barker, at Cecil Jackson's direction, rented a hotel room. (<u>Id.</u> at 1118-19). After Barker rented the room, the group carried belongings from the trunk of a car up to the room, including a suitcase containing two firearms and crack cocaine, some of which was packaged in small baggies and some of which had not yet been divided and packaged. (<u>Id.</u> at 1118-21; 1178-83). The next day, local bail bondsmen apprehended Cecil Jackson at the hotel and then reported to a Charlotte Police Department officer that guns and drugs were inside the hotel room. (<u>Id.</u> at 1174-77). That same night, investigating officers returned to the hotel and, with Roseboro's consent, searched the hotel room, finding the suitcase with the guns and crack inside, as well as drug paraphernalia. (<u>Id.</u> at 1177-84). While officers were still in the hotel room with Roseboro, who was present when they arrived, Roseboro advised the officers that Petitioner and another of his friends might be returning to the hotel and would be driving a black Ford Escort. (<u>Id.</u> at 1194-96). Shortly thereafter, Petitioner and a third party were seen pulling into a gas station parking lot next to the hotel. (<u>Id.</u> at 1196). Officers, who had been informed that the pair might be armed, arrested them and found a .38 caliber pistol under Petitioner's seat. (<u>Id.</u> at 1196-99).

In the Fall of 1989, the organization shot street dealers and drug buyers who failed to pay for their cocaine. In late October 1989, Petitioner, Cecil and Orrin Jackson, and two other gang members shot at Willie Jeter, a rival gang member. (<u>Id.</u> at 410-13). Less than a month later, Petitioner ordered the shooting of drug dealer Fred Thomas after he failed to pay a drug debt. (<u>Id.</u> at 565-68). That same month, Petitioner pointed a firearm at Deborah Small when she told him that she did not want the gang to sell cocaine from her house. (<u>Id.</u> at 557-59).

On or about December 23, 1989, Petitioner, Cecil and Orrin Jackson, and another gang member participated in a drive-by shooting into the house a rival gang shared with his mother.

(Id. at 458-60).  Petitioner shot a .9 millimeter pistol into the house and a car parked in the driveway, while Orrin Jackson fired a .9 millimeter Uzi and Cecil Jackson attempted to fire a .12 gauge shotgun.  (Id.).

Two weeks later, on January 7, 1990, Petitioner, the Jackson brothers, and other gang members lured a rival gang member to an area where they were waiting in ambush.  (J.A. at 464-67).  The gang carried numerous weapons, including two .12-gauge shotguns, several pistols, a .25 caliber automatic, and a .22 Uzi.  (Id. at 467-68).  When the rival gang member's car was spotted, two gang members opened fire.  (Id. at 467; 469).

Finally, in late January 1990, Petitioner shot at Charles Burris, a junior high school student who had failed to pay a drug debt to Petitioner.  (Id. at 1294-96).  Petitioner missed Burris but hit another person.  (Id. at 1296-97).  Following Cecil Jackson's arrest in February 1990, Petitioner directed other gang members to sell as much cocaine as possible in order to raise money for Cecil Jackson's bond.  (Id. at 487-89).

**B. Petitioner is charged with drug-trafficking and firearm offenses, convicted of all charges by a jury, and sentenced to life plus 105 months in prison.**

Petitioner, the Jackson brothers, and seven others were indicted by a federal grand jury and charged with conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One).   (Doc. No. 47-1: Indictment, Attached as Ex. 1).  The grand jury alleged 11 specific instances of possession with intent to distribute crack cocaine by members of the conspiracy, as well as 19 specific instances of firearm possession, carrying, or use by members of the conspiracy with the purpose to protect the gang's crack cocaine, to intimidate rival drug traffickers, to enforce the gang's collection efforts against dealers who sold crack on the gang's behalf, and to punish dealers who failed to pay their debts.  Petitioner and

Cecil Jackson were also charged with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. §§ 841 and 848 (Counts Two and Three), and Petitioner was charged with one count of possession with intent to distribute crack cocaine and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Eleven). Petitioner was also charged with two counts of using or carrying a firearm during and in relation to a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Counts Fourteen and Thirty-Seven), and 10 counts of using or carrying a firearm during and in relation to a drug-trafficking offense and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c) and 2 (Counts Five, Twelve, Thirteen, Nineteen, Twenty-Two, Twenty-Four through Twenty-Six, Twenty-Eight, and Twenty-Nine).

Petitioner's case was tried before a jury, at the conclusion of which the jury was instructed that in order to find Petitioner guilty on an aiding-and-abetting theory, the jury had to find each element of the substantive offense beyond a reasonable doubt "and that the [petitioner] willfully participated in its commission." (J.A. at 1712-13). The jury found Petitioner guilty of all 15 offenses with which he was charged. (Id. at 1741; Doc. No. 47-1 at 20: Judgment). This Court sentenced Petitioner to life plus 105 months in prison, to be served consecutively. (J.A. at 197-98; Doc. No. 47-1 at 21). Petitioner appealed, and the Fourth Circuit affirmed all but Petitioner's drug-trafficking conspiracy conviction, vacating that conviction because Petitioner could not be convicted of both the drug-trafficking conspiracy and the continuing criminal enterprise offenses under the Double Jeopardy Clause. United States v. Jackson, 1992 WL 4248, at *3 (4th Cir. Jan. 14, 1992). The Fourth Circuit remanded Petitioner's case to this Court with instructions to vacate his 21 U.S.C. § 846 conspiracy conviction. Id. On remand, this Court entered an amended judgment, vacating Petitioner's conviction on Count One but otherwise

leaving the terms of the original judgment intact.  See (Crim. Case No. 3:90-cr-85, Doc. No. 4 at 5).

**C.     Petitioner's Motion to Vacate and Subsequent Relevant Proceedings in this Court.**

On May 2, 1997, Petitioner filed a motion to vacate under 28 U.S.C. § 2255.  (WDNC Civil No. 3:97cv262).  Petitioner later moved to dismiss his motion to vacate, and this Court granted Petitioner's motion with prejudice.  (Id., Doc. Nos. 4; 6).  Ten years later, Petitioner sought to vacate this Court's order dismissing his motion to vacate with prejudice, and this Court granted that motion on November 13, 2007, stating that its earlier order dismissing Petitioner's motion to vacate with prejudice was void.  (Id., Doc. No. 11).  Petitioner filed a second motion that was ultimately construed as a motion to vacate in February 2012, and this Court dismissed that motion without prejudice.  (WDNC Civil No. 3:13cv181, Doc. No. 15).

On October 28, 2014, Petitioner filed the underlying motion to vacate in this action, bringing claims under Bailey v. United States, 516 U.S. 137 (1995), the Double Jeopardy Clause of the U.S. Constitution, and under Rosemond v. United States, 134 S. Ct. 1240 (2014).  (Doc. No. 1).  More specifically, Petitioner argues that (1) the jury instructions given by this Court in 1990 were invalid in light of the Supreme Court's decision in Bailey; (2) the jury instructions given by this Court in 1990 were invalid in light of Rosemond; and (3) Petitioner's multiple 924(c) convictions and sentences for aiding and abetting violate the Double Jeopardy Clause under Rosemond.

In an order dated November 17, 2014, this Court dismissed without prejudice Petitioner's motion to vacate, finding that it was an unauthorized successive petition.  (Doc. No. 6).  On November 25, 2014, Petitioner filed a motion for reconsideration of the Court's Order.  (Doc.

No. 8).  On December 2, 2014, this Court entered an Order granting the motion for reconsideration, and then dismissing with prejudice all of Petitioner's claims as untimely, including Petitioner's claim brought under <u>Rosemond</u> based on this Court's finding that <u>Rosemond</u> does not apply retroactively on collateral review.  (Doc. No. 9).

On March 2, 2015, Petitioner filed the pending motion for reconsideration, arguing, among other things, that <u>Rosemond</u> applies retroactively on collateral review.[2]  That pending motion for reconsideration is now before the Court.  On March 9, 2015, the Court ordered the Government to respond to the motion for reconsideration.   (Doc. No. 21).  In its response, the Government states that it concedes that <u>Rosemond</u> is retroactively applicable on collateral review, but the Government argues that Petitioner's <u>Rosemond</u> claim is procedurally defaulted, and Petitioner has not shown cause and prejudice or actual innocence to excuse the default.  The Government further contends that this Court properly dismissed as untimely Petitioner's claims under <u>Bailey</u> and the Double Jeopardy Clause, as Petitioner raised these claims long after the one-year statute of limitations for filing these claims had passed.  For the following reasons, the Court affirms its prior dismissal as untimely of Petitioner's claims under <u>Bailey</u> and the Double Jeopardy Clause.  The court further finds that, even if Petitioner's <u>Rosemond</u> claim is timely, it is nonetheless subject to dismissal for the reasons stated in this Order and in the Government's brief in response to the motion for reconsideration.

## II.    DISCUSSION

### A.  Petitioner's "Motion for Recusal under 28 U.S.C. §§ 144 and 455," (Doc. No. 56).

---

[2]   Before filing the pending motion for reconsideration, Petitioner filed another motion for reconsideration.  (Doc. No. 18).  This Court granted the motion for reconsideration on January 29, 2015, but the Court then affirmed the Court's prior dismissal of the petition as time-barred. <u>See</u> (Doc. No. 19).

The Court first considers Petitioner's motion for recusal under 28 U.S.C. §§ 144 and 455. Under 28 U.S.C. § 144, a litigant may seek recusal of a judge if the litigant files "a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. The affidavit must state with particularity "the facts and the reasons for the belief that bias or prejudice exists." Although the judge must accept as true the facts alleged in an affidavit filed under 28 U.S.C. § 144, the judge is not required to accept as true conclusory statements, opinions, or speculations. Davis v. United States, No. 1L99cv842, 2002 WL 1009728, at *1 (M.D.N.C. Jan. 8, 2002) (citing Marty's Floor Covering Co. v. GAF Corp., 604 F.2d 266 (4th Cir. 1979)).

Second, under 28 U.S.C. § 455, a judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," or "[w]here he has a personal bias or prejudice concerning a party...." 28 U.S.C. § 455(a) & (b)(1). The test for determining impartiality is objective. See United States v. Cherry, 330 F.3d 658, 665 (4th Cir. 2003) (citing In re Beard, 811 F.2d 818, 827 (4th Cir. 1987)). In other words, "disqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial." Id. A presiding judge is not, however, required to recuse himself simply because of "unsupported, irrational, or highly tenuous speculation." Cherry, 330 F.3d at 665 (citing United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998)).

In support of his motion for recusal under 28 U.S.C. §§ 144 and 455, Petitioner contends that the undersigned has shown bias towards the Government based on the undersigned's finding that the Government's untimely filing was caused by excusable neglect. Specifically, this Court found, in an order dated June 4, 2015, that the Government had shown excusable neglect for

filing its response to Petitioner's motion for reconsideration past the deadline. Petitioner argues that the undersigned improperly found excusable neglect sua sponte, rather than as a result of a motion and argument by the Government. See (Doc. No. 31). Petitioner also accuses the undersigned of participating in ex parte communications with the Government in reaching the decision as to excusable neglect.

Petitioner has not shown that the undersigned has a bias towards the Government in this action based on the fact that the undersigned found that the Government's delayed filing was caused by excusable neglect. It is well established that cases should be decided "on the merits instead of disposing them on technicalities." Hall v. Greystar Mgmt. Servs., L.P., No. 14-2145, 2016 WL 241377, at *4 (4th Cir. Jan. 21, 2016). Here, rather than acting as an advocate for the Government in excusing its late filing, the undersigned was acting in accordance the policy in the federal courts that issues should be decided on the merits rather than on procedural technicalities. Moreover, although the Government did not use the phrase "excusable neglect" in its motion for leave to file out of time, the Government did offer valid reasons for failing to file its response within the deadline—that is, the Government explained that it needed to obtain and review archived files because of the age of Petitioner's underlying criminal action, and that the review and drafting of the response brief took longer than anticipated. See (Doc. No. 28). If Petitioner chooses to appeal this decision, and if the Fourth Circuit Court of Appeals agrees with Petitioner that the circumstances warrant recusal of the undersigned, the undersigned will respectfully recuse himself from this case. However, it does not appear to the undersigned that a reasonable basis exists for questioning a judge's impartiality where a judge finds that the Government has presented excusable neglect for a late filing. Finally, as to Petitioner's conclusory allegation that this Court participated in ex parte communications with the Government in this case, while the

Court may have been in contact with the Government regarding filing deadlines, this does not amount to inappropriate ex parte communications, as the communications concerned procedural matters rather than substantive matters. Petitioner's motion for recusal is denied.

**B. Petitioner's "Motion for Reconsideration re Order denying Motion/Objection to the Government's Untimely Filing of Exhibit, (Doc. No. 57)."**

Next, in Petitioner's "Motion for Reconsideration re Order denying Motion/Objection to the Government's Untimely Filing of Exhibit" Petitioner contends that the undersigned improperly found that the Government had shown excusable neglect for the untimely filing of the Government's Exhibit 1A in this case, consisting of records from Petitioner's underlying criminal case in support of the Government's brief in opposition to Petitioner's motion for reconsideration. Petitioner again argues that the undersigned has shown bias towards the Government and that the undersigned has acted as an advocate for the Government in excusing the Government's late filings. Here, the documents that Petitioner takes issue with consisted of portions of the trial record, and the Government attached them as Exhibit 1A in response to an Order from the Court regarding conforming the Government's exhibits to an admissible form. See (Doc. No. 37). The Court declines to strike these documents. As the Court has discussed, it is preferable to address the merits rather than disposing of cases based on technicalities. As the Court stated in a prior order denying Petitioner's objection to the Government's untimely filing of Exhibit 1A in this matter:

> Even if petitioner is right and excusable neglect has not been shown, petitioner has not made a showing that such delay has resulted in any prejudice to him. In particular, he has not shown that such delay has resulted in him serving time that he would not otherwise be required to serve. Indeed, this court has at every turn allowed petitioner sufficient time to respond to the sometimes imperfect government filings and has done as much in regards to the government's conforming exhibit, allowing petitioner 30 days to respond. Order (#48). This court is not going to grant habeas corpus relief based on a missed response

deadline by respondent; rather, it is going to fully consider the claims petitioner has made, the government's response and exhibit, and any reply and exhibits or citations to the exhibit petitioner wishes the court to consider. To do otherwise would be to invite reversal on appeal.

(Doc. No. 52). In sum, Petitioner's motion for reconsideration is denied.

### C. Petitioner's Motion for Reconsideration of this Court's Order Dismissing Petitioner's Motion to Vacate As Untimely

#### 1. Timeliness of Petitioner's Claims under Bailey, Rosemond, and the Double Jeopardy Clause

The Court next considers Petitioner's motion for reconsideration of the Court's prior Order dated December 2, 2014, dismissing all of Petitioner's claim as untimely. See (Doc. No. 9). In the underlying motion to vacate, Petitioner asserted claims based on Bailey, Rosemond, and the Double Jeopardy Clause. This Court initially dismissed Petitioner's claims without prejudice, finding that the motion to vacate was an unauthorized successive petition. (Doc. No. 6). On a motion for reconsideration by Petitioner, the Court subsequently found that all of Petitioner's claims are time-barred. See (Doc. Nos. 9; 12). Petitioner has now filed the pending motion for reconsideration, in which he argues specifically that his Rosemond claim is not time-barred because the Government has conceded that Rosemond applies retroactively on collateral review, and because he filed his motion to vacate within one year of the issuance of Rosemond.

As a general rule, a motion to vacate under 28 U.S.C. § 2255 must be filed within a year of the date on which the petitioner's judgment of conviction becomes final. See 28 U.S.C. § 2255(f)(1). One exception to this general rule is provided in § 2255(f)(3), which reopens the one-year time period from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Id. § 2255(f)(3). As the Supreme Court

made clear in <u>Dodd v. United States</u>, 545 U.S. 353 (2005), if the Court "decides a case recognizing a new right, a federal prisoner seeking to assert that right will have one year from [the] Court's decision within which to file his § 2255 motion." <u>Id.</u> at 358.

For the reasons stated in the Court's prior Order on Petitioner's motion to vacate, the Court reaffirms its prior finding that Petitioner's claims under <u>Bailey</u> and the Double Jeopardy Clause are untimely, as Petitioner filed this action well after the one-year statute of limitations had run under 28 U.S.C. § 2255(f)(1) as to those two claims. <u>See</u> <u>Zack v. Tucker</u>, 704 F.3d 917, 926 (11th Cir. 2013) (en banc) (timeliness of claims in a collateral attack must be made on a per-claim basis). However, as to Petitioner's <u>Rosemond</u> claim, the Government now asserts in its response brief that <u>Rosemond</u> applies retroactively on collateral review. The Government asserts that because Petitioner filed his motion to vacate within one year of <u>Rosemond</u>, which was issued on March 5, 2014, his claim under <u>Rosemond</u> was timely presented. The Government further argues, however, that Petitioner's <u>Rosemond</u> claim is procedurally defaulted. For the following reasons, and assuming that <u>Rosemond</u> applies retroactively on collateral review and that Petitioner's <u>Rosemond</u> claim is timely, the Court agrees with the Government that Petitioner's <u>Rosemond</u> claim is nevertheless procedurally defaulted, and he is not entitled to relief under <u>Rosemond</u>.

**2.      Petitioner's Argument that He is Actually Innocent of Aiding and Abetting as to the § 924(c) Convictions in Light of <u>Rosemond</u>, and His Related Argument that He Was Given Jury Instructions that Were Erroneous in Light of <u>Rosemond</u>.**

In <u>Rosemond</u>, the Supreme Court held that, to prove that a defendant aided and abetted the offense of using or carrying a firearm during and in relation to a crime of violence or drug-trafficking crime, the government must show "that the defendant actively participated in the

underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." Rosemond, 134 S. Ct. at 1243. The Supreme Court held that a person is liable under 18 U.S.C. § 2 for aiding and abetting an offense if he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission. Id. at 1245. In the § 924(c) context, a defendant need only take an affirmative act in furtherance of either the use of a firearm or the commission of a drug-trafficking or violent offense. Id. at 1247. It is not necessary that the defendant's acts "did not advance each element of the offense; all that matters is that they facilitated one component." Id. With respect to the intent requirement, however, aiding-and-abetting liability requires "a state of mind extending to the entire crime." Id. at 1248. Thus, as to aiding-and-abetting liability in the § 924(c) context, the defendant must know that one of his confederates will carry a gun "at a time [he] can do something with it—most notably, opt to walk away." Id. at 1249-50. The Court also recognized that, where a defendant continues to participate in a crime after a gun is displayed or used by a confederate, a jury may permissibly infer that a defendant has advance knowledge. Id. at 1250 n.9. Having defined aiding-and-abetting liability in the § 924(c) context, the Rosemond Court vacated the defendant's § 924(c) conviction because the district court's instructions to the jury allowed the jury to find the defendant guilty without a finding that the defendant had advance knowledge of the firearm. Id. at 1251-52.

Here, because Petitioner failed to raise on direct review the claim he now asserts under Rosemond, he is in procedural default as to that claim. Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised on collateral review only if the defendant can first demonstrate cause and actual prejudice, or that he is actually innocent of the conviction he challenges. Bousley v. United States, 523 U.S. 614, 622

13

(1998). In challenging each of his § 924(c) convictions, Petitioner first argues that he is actually innocent of each of these convictions under the narrower understanding of aiding-and-abetting liability as articulated in Rosemond. The Government contends that Petitioner cannot show actual innocence, where the jury could reasonably infer from the evidence presented at trial that Petitioner was aware of the firearms supporting each of his § 924(c) convictions or where, in any event, the use or carrying of a firearm in furtherance of the drug-trafficking conspiracy was reasonably foreseeable to him. For the following reasons, the Court agrees with the Government that Petitioner cannot show actual innocence to excuse his procedural default.

As an initial matter, Petitioner was not charged in Counts Fourteen and Thirty-Seven with having aided and abetted the use or carrying of a firearm during and in relation to a drug-trafficking offense. Rather, in those counts, he was charged with committing the offense directly. Because Rosemond only addresses aiding-and-abetting liability, it does not affect Counts Fourteen and Thirty-Seven. As to the remaining counts, Count Five involved the March 25, 1989, shooting of Elliott Alexander to enforce a drug debt. According to the trial evidence, Alexander was shot during a drive-by shooting involving multiple cars and numerous gang members. While Alexander only identified Cecil Jackson as one of the shooters and did not identify other gang members at trial, he previously provided testimony that Petitioner was with Cecil Jackson during the drive-by shooting. See (Doc. No. 30: Ex. 2). As the Government notes, given that a drive-by shooting requires the use or carrying of a firearm and that the Government's evidence established that the shooting occurred in furtherance of the drug-trafficking conspiracy, the Government's evidence supports Petitioner's conviction in Count Five under an aiding-and-abetting theory and Rosemond. In any event, even if the Government's evidence had not shown that Petitioner knew that a firearm would be used during the drive-by

shooting, Petitioner would still be guilty under the doctrine established in <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946).  Under the <u>Pinkerton</u> doctrine, "a defendant is 'liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy.'"  <u>United States v. Blackman</u>, 746 F.3d 137, 141 (4th Cir. 2014) (quoting <u>United States v. Dinkins</u>, 691 F.3d 358, 384 (4th Cir. 2012)).  As the Fourth Circuit has explained, "[t]he idea behind the <u>Pinkerton</u> doctrine is that the conspirators are each other's agents; and a principal is bound by the acts of his agents within the scope of the agency."  <u>United States v. Aramony</u>, 88 F.3d 1369, 1379 (4th Cir. 1996) (quoting <u>United States v. Manzella</u>, 791 F.2d 1263, 1267 (7th Cir. 1986)).  Thus, "so long as the partnership in crime continues, the partners act for each other in carrying it forward."  <u>Pinkerton</u>, 328 U.S. at 646.

The Fourth Circuit has also explained that, while <u>Pinkerton</u> liability is analogous to aiding-and-abetting liability insofar as <u>Pinkerton</u> liability "merely represents an alternative form of vicarious liability," <u>Pinkerton</u> liability suffices to support a defendant's conviction, even where the quantum of proof on an aiding-and-abetting theory may be lacking.  <u>Blackman</u>, 746 F.3d at 141.  In <u>Blackman</u>, for example, the Fourth Circuit declined to address the defendant's liability under an aiding-and-abetting theory but nevertheless upheld the defendant's § 924(c) conviction for brandishing a firearm during and in relation to a crime of violence under <u>Pinkerton</u>, holding that the Government's evidence "clearly demonstrated that [the defendant] not only joined the alleged conspiracy, but that the use of a firearm was both reasonably foreseeable to him and in furtherance of the goals of the conspiracy."  <u>Id.</u> at 141-42.

Here, the Government's evidence at trial showed that Petitioner participated in an extraordinarily violent gang whose members, particularly its leaders including Cecil Jackson and Petitioner, regularly carried firearms and regularly used firearms to further the goals of the

conspiracy. The indictment charged 19 specific instances in which firearms or other weapons were either used or carried in furtherance of the conspiracy, including nine separate shootings. Thus, the Government's evidence "clearly demonstrated that [Petitioner] not only joined the alleged conspiracy, but that the use of a firearm was both reasonably foreseeable to him and in furtherance of the goals of the conspiracy." See Blackman, 746 F.3d at 141-42. At a minimum, then, Petitioner is not actually innocent of Count Five because his co-conspirators' use of a firearm in furtherance of their jointly undertaken enterprise was reasonably foreseeable.

For the same reasons, Petitioner cannot show that he is actually innocent of using and carrying the firearms found in the suitcase in the hotel room on or about July 1, 1989, which firearms supported Petitioner's convictions under Counts Twelve and Thirteen. At trial, the Government's evidence demonstrated that Petitioner was present when belongings, including clothes, guns, and crack cocaine, were carried up to the hotel room that Barker rented at Cecil Jackson's direction. Barker testified at trial that at some point while he helped carry Cecil Jackson's clothes "and stuff" into the room, he saw two firearms in a small suitcase. While no witness testified that Petitioner saw the contents of the suitcase, the jury could reasonably infer from the evidence presented that Petitioner was aware that the hotel room would contain firearms that were carried to the room during and in relation to the drug-trafficking conspiracy. Petitioner cannot, therefore, show that he is actually innocent of aiding and abetting the § 924(c) firearm offenses relating to those two firearms.

Even if the Government's proof were insufficient as to Petitioner's awareness of the firearms and he could show that he was actually innocent under an aiding-and-abetting theory of liability, he cannot show that he is actually innocent of Counts Twelve and Thirteen, because the Government's evidence established that the members of this particular drug-trafficking

conspiracy regularly employed firearms to further the ends of the conspiracy and did so at the direction of its leaders, including Petitioner. Cecil Jackson's use and carrying of the two firearms found in the hotel room, along with crack cocaine packaged for distribution, was, therefore, reasonably foreseeable to Petitioner, and Petitioner is legally responsible for the use and carrying of those firearms under <u>Pinkerton</u>.

Next, Count Fourteen charged Petitioner's use or carrying of the firearm found under the passenger's seat of the Ford Escort, after Purvis Roseboro warned officers that his associates might return to the hotel in a black Ford Escort and that they might be armed. The jury could reasonably infer from Petitioner's proximity to the firearm (directly under his seat), as well as from Roseboro's testimony, that the firearm had been put there by Petitioner, sufficient to support Petitioner's conviction under Count Fourteen without any imputation of vicarious liability. In each of the remaining § 924(c) counts of which Petitioner was convicted, Petitioner personally participated in or ordered shootings undertaken in furtherance of the drug-trafficking conspiracy. In Count Eighteen, for example, Petitioner was held responsible for the firearm used in the shooting of Fred Thomas—a shooting that Petitioner directly ordered. <u>See</u> (J.A. at 566-67). Counts Twenty-Two and Twenty-Four through Twenty-Six relate to a drive-by shooting during which Petitioner shot a .9 millimeter pistol and other gang members shot other firearms into the home a rival gang member shared with his mother. Finally, Counts Twenty-Eight and Twenty-Nine relate to the planned ambush of a rival gang leader. Although the firearms supporting those convictions were used by other gang members, Petitioner was present and an active participant in the plan to shoot and kill the rival.

Based on this evidence, the jury could reasonably infer that Petitioner was aware, before each of these shootings, that firearms would be used and that the shootings were in furtherance

of the drug-trafficking conspiracy.  Even if the Government's proof were somehow inadequate as to any of these convictions under an aiding-and-abetting theory of liability, however, the Government's evidence established that Petitioner was a leader of a street gang whose members regularly used guns to intimidate and shoot to kill rival gang members or any person who interfered with the objectives of the drug-trafficking conspiracy.  Under these circumstances, Petitioner cannot show that he is actually innocent of any of the § 924(c) counts of conviction.

Because Petitioner cannot demonstrate actual innocence, his <u>Rosemond</u> claims are procedurally defaulted unless he can demonstrate cause to excuse his failure to make those claims earlier and actual prejudice.  First, Petitioner has not argued, nor can he show, cause for his default.  <u>See</u> <u>Whiteside v. United States</u>, 775 F.3d 180 (4th Cir. 2014) (en banc) (noting that "alleged futility cannot serve as 'cause' for a procedural default in the context of collateral review").  Additionally, for the same reasons that Petitioner cannot demonstrate his actual innocence, Petitioner cannot satisfy the actual-prejudice standard required to excuse his procedural default.  As part of his <u>Rosemond</u> claim, Petitioner argues in the motion to vacate that this Court's jury instructions were erroneous under <u>Rosemond</u>.  To show actual prejudice as a result of an error in the jury instructions concerning an element of a crime, a petitioner must show that the erroneous jury instruction "worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimension."  <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis in original).  The Government's evidence related to each of the § 924(c) counts of conviction permitted a reasonable juror to conclude that Petitioner was aware of the firearm that triggered the charge, as well as its use to further the objectives of the drug-trafficking conspiracy.  Thus, even if the jury had been instructed in accordance with <u>Rosemond</u>, Petitioner would still have been convicted of each of the § 924(c) charges under an aiding-and-

abetting theory.  Further, even if Petitioner could show that no reasonable juror would have found him guilty of aiding and abetting a particular § 924(c) offense based on a <u>Rosemond</u>-compliant instruction, he was also guilty of the § 924(c) offenses under the <u>Pinkerton</u> doctrine, and Petitioner has not challenged the <u>Pinkerton</u> instruction as inadequate.  <u>Accord</u> <u>United States v. Hare</u>, 2016 WL 1567051, at *9 (4th Cir. Apr. 19, 2016) (finding that the failure to give a <u>Rosemond</u> instruction did not affect the defendants' substantial rights because the jury was given a correct <u>Pinkerton</u> instruction).  In sum, because there was an independent basis for Petitioner's § 924(c) convictions, Petitioner cannot show that any instructional error worked to his actual and substantial disadvantage.  Having failed to demonstrate either cause or prejudice, Petitioner's claim based on jury instructions that did not comply with <u>Rosemond</u> is procedurally defaulted and dismissed.

Finally, in addition to arguing that he is actually innocent under <u>Rosemond</u> and that this Court's instructions to the jury were erroneous, Petitioner also argues that his multiple § 924(c) convictions based on his participation in a single drug-trafficking conspiracy violates the Double Jeopardy Clause and that this argument is supported by <u>Rosemond</u>.  <u>Rosemond</u>, however, did not address the Double Jeopardy Clause; thus, it did not announce a new right related to double jeopardy.  Accordingly, <u>Rosemond</u> did not reopen the statute of limitations to permit petitioners whose convictions are final to challenge their convictions as violations of the Double Jeopardy Clause.  Thus, as this Court already found in its prior order, Petitioner's claim under the Double Jeopardy Clause is time-barred.

## III.    CONCLUSION

For the foregoing reasons, the Court grants Petitioner's motion for reconsideration of this Court's prior order dismissing Petitioner's motion to vacate as time-barred to the extent that the

Court has reconsidered and found as timely Petitioner's <u>Rosemond</u> claim, but the Court

nevertheless finds that Petitioner's <u>Rosemond</u> claim is procedurally defaulted, and Petitioner has

not shown cause and prejudice or actual innocence to excuse the procedural default.

**IT IS, THEREFORE, ORDERED** that:

1.  Petitioner's "Motion for Reconsideration" of this Court's prior order dismissing

    Petitioner's motion to vacate as time-barred, (Doc. No. 20), is **GRANTED** to the

    extent that the Court has reconsidered and found as timely Petitioner's <u>Rosemond</u>

    claim, but the Court has nevertheless found that Petitioner's <u>Rosemond</u> claim is

    procedurally defaulted.

2.  Petitioner's "Motion for Recusal under 28 U.S.C. §§ 144 and 455," (Doc. No. 56),

    and Petitioner's "Motion for Reconsideration re Order denying Motion/Objection

    to the Government's Untimely Filing of Exhibit," (Doc. No. 57), are both

    **DENIED**.

3.  The Clerk's office is respectfully instructed to terminate this case.

4.  **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules

    Governing Section 2254 and Section 2255 Cases, this Court declines to issue a

    certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>,

    537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must

    demonstrate that reasonable jurists would find the district court's assessment of

    the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473,

    484 (2000) (when relief is denied on procedural grounds, a petitioner must

    establish both that the dispositive procedural ruling is debatable and that the

    petition states a debatable claim of the denial of a constitutional right).

5.      In accordance with <u>Wilder v. Chairman of the Central Classification Bd.</u>, 926

F.2d 367, 371 (4th Cir.) ("while not mandated, the preferable practice is to

include a statement to all final orders involving pro se litigants setting forth the

litigants' appellate rights"), <u>cert. denied</u>, 502 U.S. 832 (1991), Petitioner is hereby

advised that despite the denial of a Certificate of Appealability, he has the right to

appeal this decision to the Court of Appeals of the Fourth Circuit by filing a

Notice of Appeal with the Clerk of this Court within the time prescribed in Rule

4(a), Federal Rules of Appellate Procedure, which is 60 days from entry of this

Order denying his Motion to Reconsider, all in accordance with Rule 11(b) of the

Rules Governing Section 2255 Proceedings and Rule 4(a)(4)(A)(iv) of the Federal

Rules of Appellate Procedure.  Failure to file a Notice of Appeal within the time

allowed requires the filing of a motion for extension of time and the filing of a

Notice of Appeal within the 30-day period after such original time for appeal.

FED. R. APP. P. 4(a)(5).  <u>See</u> <u>United States ex rel. Leonard v. O'Leary,</u> 788 F.2d

1238, 1240 (7th Cir. 1986).  As the Court has declined issuance of a Certificate of

Appealability, Petitioner is further advised that if he elects to file a Notice of

Appeal, Petitioner should request therewith that a circuit judge issue a Certificate

of Appealability as provided in the last sentence of Rule 22(b)(1).

Signed: May 19, 2016

Max O. Cogburn Jr.
United States District Judge